UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELROSE STEPHENS-BUIE,

    Plaintiff,

    v.

ERIC SHINSEKI, Secretary, United States
Department of Veterans Affairs,

    Defendant.

**MEMORANDUM
& ORDER**

09 Civ. 2397 (LBS)

---

SAND, J.

  Plaintiff Melrose Stephens-Buie brings this action pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), and the Rehabilitation

Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), alleging discrimination on the basis

of her race, color, national origin, and disability.  Defendant moves for summary judgment

pursuant to Federal Rule of Civil Procedure 56.

  For the reasons stated below, Defendant's motion for summary judgment is granted with

respect to all of Plaintiff's claims under Title VII, and Plaintiff's hostile work environment,

failure of reasonable accommodation, and disability discharge claims under the Rehabilitation

Act.   Plaintiff is granted leave to amend her retaliation claim under the Rehabilitation Act.

## I. Background

  Plaintiff is Black, was born in Jamaica, and has been a certified nurse practitioner since

1996.  Def. 56.1 Stmt. ¶ 1–2; Pl. 56.1 Stmt. ¶ 1–2.  In June 2004, she applied for a nurse

practitioner position on the first floor of the Extended Care facility at the James J. Peters Medical

Center ("Bronx VA"), operated by the United States Department of Veterans Affairs, in the

Bronx, New York. Def. 56.1 ¶ 3. Plaintiff was offered the position by Natalie Sutcliffe, Director of the Extended Care Facility at the Bronx VA. *Id.* ¶ 5. Plaintiff began her employment at the Bronx VA on August 2, 2004. *Id.* ¶ 18.

During the time period covered by the Complaint, nurse practitioners at the Bronx VA were paid according to three grades, NP I through III, with each grade containing additional steps of increasing salary. *Id.* ¶¶ 9–10. NP II salaries ranged from $68,626 at step 1 to $91,264 at step 12, while NP III salaries ranged from $78,860 at step 1 to $102,215 at step 12. *Id.* ¶ 12. The VA Handbook establishes nine qualifications for each NP grade level. *Id.* ¶ 13. Plaintiff's initial salary determination assigned her a grade of NP II step 7 ("NP II/7"), indicating a salary of $80,974 per year. *Id.* ¶ 17; Pl. 56.1 ¶ 17 (contesting date and manner of determination).

Other nurse practitioners who worked in the Bronx VA's Extended Care facility included Lydia Keogh, Gladys Allen, and Jennifer Giwa. Def. 56.1 ¶ 29, 32, 35. Keogh is a Caucasian who began her employment at the Bronx VA with a salary of $31,311 in 1988, and had a salary of $90,690 when she left the Bronx VA in 2004. *Id.* ¶ 30–31. Allen is an African-American from the West Indies who began work at the Bronx VA as a Staff Nurse in 1983, earning a salary of $22,281; by March 21, 2004 she earned a salary of $97,605. *Id.* ¶ 32–34. Giwa, an African-American, was hired by the Bronx VA in 1986, and has since climbed to the highest position on the nursing grade scale. *Id.* ¶ 35, 37.

On October 19, 2004, Plaintiff slipped and fell on a wet floor in the Extended Care facility. *Id.* ¶ 38. Because of injuries sustained in the fall, she was absent from work between October 19 and December 28, 2004. *Id.* ¶ 39. Between December 28, 2004 and February 11, 2005, Plaintiff worked on a light duty status for four hours a day, three days a week. *Id.* ¶ 40. After a leave of absence, Plaintiff returned to work on March 8, 2005 on a shortened schedule of

four hours a day, two days a week. *Id.* ¶ 41. Plaintiff made various requests to accommodate her disability. *Id.* ¶ 45. In response, the Bronx VA changed Plaintiff's start time form 10:00 A.M. to 8:00 A.M.; suggested that Plaintiff contact the Bronx VA's computer department for additional training; provided Plaintiff with an office closer to the nurse's station to reduce walking distances; reduced the number of patients for which Plaintiff was responsible, and her responsibilities for each patient; reduced the number of days in Plaintiff's work week from three to two; suggested additional training with Giwa; and allowed her to attend team meetings. *Id.* ¶ 46. Plaintiff ceased working at the Bronx VA on June 3, 2005, *id.* ¶ 42, and was eventually terminated on August 17, 2007 when her appointment expired. Stephens-Buie Decl. Ex. 14.

Plaintiff contacted Alfred Hong, an Equal Employment Opportunity ("EEO") counselor with the Bronx VA, on May 17, 2005. Def. 56.1 ¶ 48. On June 13, 2005, Plaintiff contacted the Office of Resolution Management ("ORM") within the Department of Veterans Affairs, and filed a formal complaint of discrimination on August 15. *Id.* ¶ 49; Compl. Attach. 1. After the ORM concluded its investigation, Plaintiff elected to have her case heard before the Equal Employment Opportunity Commission ("EEOC"), and an EEOC Administrative Law Judge ("ALJ") held hearings on Plaintiff's complaint on October 26, 2007, December 19, 2007, and February 11, 2008. Def. 56.1 ¶ 51. On November 7, 2008, the ALJ issued a decision finding that the VA did not discriminate against Plaintiff. *Id.* ¶ 53. The EEOC affirmed the ALJ's decision on December 15, 2008, and provided Plaintiff with a Notice of the Right to File a Civil Action. *Id.* ¶ 54.

Plaintiff originally brought her allegations of post-injury discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"). As Plaintiff now

concedes, Pl. Mem. Opp. Mot. S.J. at 22, a federal employee's claim of disability arises not under the ADA, but under the Rehabilitation Act.[1]

## II. Legal Standard

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Id.* at 249.

The Court of Appeals for the Second Circuit has noted that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001); *Gallo*, 22 F.3d at 1224. Nonetheless, "summary judgment remains available for the

---

[1] The federal government is not considered an employer under the ADA. 42 U.S.C. 12111(5)(B)(i). Therefore, a federal government employee's "sole claim for discrimination on the basis of disability is under the Rehabilitation Act, if anywhere." *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1988).

dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997).

### III. Discussion

#### A. Plaintiff's Title VII Pay Disparity Claim

Plaintiff alleges discriminatory disparity in pay under Title VII, based upon the Bronx VA's determination of her salary shortly after she was hired in the summer of 2004.

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. . . . The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such a showing, the plaintiff must "be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext." *Id.* at 804. "The plaintiff must first establish a prima facie case by demonstrating that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). The parties dispute whether Plaintiff has satisfied the fourth prong of this test. Plaintiff argues that because of her race and national origin, she was paid a lower salary than former Bronx VA employee Lydia Keogh even though Plaintiff had more experience as a nurse practitioner.

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal citation and quotation

marks omitted). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). A plaintiff alleging disparate treatment from similarly situated employees "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham*, 230 F.3d at 39. "[T]heir circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances . . . . What is key is that they be similar in significant respects." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (internal citations omitted). "[T]o be similarly situated, employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay." *Simpson v. Metro-North Commuter R.R.*, No. 04 Civ. 2565 (PAC), 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (internal quotation marks omitted).

The parties differ on whether Plaintiff should be compared with other employees based on their length of service at the Bronx VA, or upon the length of their entire careers as qualified nurse practitioners, whether at the Bronx VA or other employers. Plaintiff claims that when she began her employment at the Bronx VA, she was similarly situated to Keogh, a White nurse practitioner in Extended Care whose position Plaintiff filled. Plaintiff also claims that she had more experience than Keogh, having received her license as a nurse practitioner in 1996. Stephens-Buie Dep. 41:16–18; Stephens-Buie Decl. Ex. 1. Therefore, she argues, pay parity dictated that she receive a higher pay level than Keogh, specifically at a grade of NP III.

Plaintiff mistakenly compares her starting salary with Keogh's salary upon leaving the Bronx VA. Keogh earned a salary of $90,690 after at least twelve years of employment with the Bronx VA, including nine promotions and four cost of living increases. Plaintiff, in contrast, had only just begun her employment with the Bronx VA when her salary was fixed at $80,974, corresponding to a grade level of NP II/7. Therefore, Plaintiff and Keogh were not similarly situated with respect to seniority. Plaintiff nevertheless maintains that her qualifications entitled her to a starting salary at NP III, higher than Keogh's final salary. In particular, she claims that seniority is a "red herring," and that "the emphasis should be on how long each functioned as an NP." Pl. Mem. Opp. Mot. S.J. at 19. These claims are mistaken. First, Plaintiff cites no authority for the claim that this Court should ignore seniority and focus only on the length of time Plaintiff and Keogh were qualified as nurse practitioners. Second, Keogh's personnel records indicate that she began working at the Bronx VA as a nurse practitioner in 1988, eight years before Plaintiff received her license as a nurse practitioner and began working in that capacity for other employers. Hong Decl. Ex. A; Stephens-Buie Dep. 41:16–18, 50:21–23. Plaintiff provides no other evidence that she possessed nurse practitioner qualifications that were superior to Keogh's. Given this failure, Plaintiff cannot establish that she was "similarly situated in all material respects" to Keogh. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60 (2d Cir. 1997). Therefore, she cannot establish that she was entitled to a NP III salary equal to or higher than Keogh's. Nor can she establish that any salary differential between her and Keogh gives rise to an inference of discrimination.

Plaintiff also argues that two irregularities in the Bronx VA's determination of her salary raise an inference of discrimination. First, she contends that she was promised an NP III salary grade when she accepted the Bronx VA's offer of employment, that the position is assigned an

NP III grade, and that her lower starting salary was temporary pending review of her credentials. Compl. Part II, Section E, ¶ D. However, the job announcement for the position Plaintiff accepted did not mention a salary, Blain Decl. Ex. K, and Plaintiff offers no evidence that it was assigned an NP III grade. Moreover, the NP III grade provides for a salary range between $78,860 at step 1 to $102,215 at step 12. *Id.* Ex. M. Therefore, an NP III grade would not have necessarily resulted in a salary higher than Keogh's. The fact that Plaintiff was not initially hired with an NP III salary does not establish circumstances giving rise to an inference of discrimination.

Second, Plaintiff maintains that the Bronx VA manipulated the process of approving the verification of her credentials, and that this delay ensured that she would not receive an NP III salary. In particular, she claims that one of her supervisors put a hold on the review of her credentials on October 20, 2004, one day after she suffered the injury that led to her disability. Compl. Pt. II, Section E, ¶ H. Plaintiff appears to argue that this hold and her initial hiring were part of a combined strategy to fraudulently secure her employment at what she calls a reduced salary. However, she offers no evidence for such speculation. On the contrary, Plaintiff concedes that her credentialing process was completed and approved nine days after the hold was allegedly placed on her credentials file. Stephens-Buie Dep. 265:6–9; Blain Decl. Ex. S.[2]

---

[2] Elsewhere Plaintiff asserts that her credentials were placed on hold until May 18, 2005. In response, Defendant claims that the Bronx VA conducted two separate reviews of Plaintiff's credentials. The first was conducted by the Bronx VA's Nurse Professional Standards Board ("NPSB"); it verified the information in Plaintiff's employment application and made a recommendation concerning her salary determination. Aurora Alconaba Dep. 39:7–41:6, 59:13–65:15; Shiroshell Dingle Dep. at 58:4–20, 125:2–127:19; Lynda Olender Dep. 74:10–75:8, 78:25–79:14, 81:15–25. As stated *supra*, this review was completed on October 29, 2004, and Plaintiff's claim of a hold motivated by discriminatory animus is without merit.

The second review was conducted by the Bronx VA Medical or Hospital Professional Standards Board ("PSB"), a separate entity from the NPSB. Dingle Dep. 58:4–20; Carol Allen Dep. 65:17–66:23; Olender Decl. ¶¶ 5–6. This inquiry determined whether Plaintiff should be granted clinical privileges, including the right to write prescriptions and practice medicine in her area of specialty. Allen Dep. 61:4–12; Olender Decl. ¶¶ 4, 6. The PSB review concluded on May 18, 2005, granting clinical privileges to Plaintiff. Blain Decl. Exs. Z, AA. Defendant provides evidence showing that the PSB review has no effect on Plaintiff's salary determination. Allen Dep. 113:22–114:19; Olender Decl. ¶ 6. Plaintiff disputes this claim but offers no evidence of her own in rebuttal. Nor

Plaintiff does not establish that the alleged hold on her file had any effect on her salary, or that it presents circumstances supporting an inference of discrimination.

Plaintiff's sole remaining allegation showing an inference of discrimination is the mere fact that her race and national origin differ from other employees and administrators in the Bronx VA. In her deposition testimony she repeatedly stated that the Bronx VA administrators and employees involved in her salary determination were either White, Stephens-Buie Dep. 210:14–20, 220:15–23, 221:7–22, 226:15–22; "non[-]Black," *id.* 224:25–225:8; or Black but of a different national origin, *id.* 222:22–223:14. Ultimately, Plaintiff contends that her salary level was the product of unlawful discrimination because the Bronx VA administrators were "all non[-]Jamaicans," *id.* 234:25, and "were able to see my race from my application." *Id.* 227:17–18. However, "differences in national origin and race are simply insufficient to themselves demonstrate intentional unlawful discrimination." *Turner v. NYU Hosps. Ctr.*, __ F. Supp. 2d __, No. 06 Civ. 1910 (GBD), 2011 WL 832879, at *12 (S.D.N.Y. Mar. 4, 2011).

In sum, no evidence on the record supports Plaintiff's conclusion that her salary determination was attributable to unlawful discrimination on the basis of race or national origin. Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII pay disparity claim is granted.

### B. Plaintiff's Claims under the Rehabilitation Act

Plaintiff brings claims of unlawful discrimination under the Rehabilitation Act, alleging that Defendant did not provide her with reasonable accommodations after her injury on October 19, 2004 and that she was discharged for seeking such accommodations.

---

does she provide any evidence showing that any discriminatory animus was involved in these determinations. Therefore, the dispute over the precise nature of Plaintiff's credentialing process does not create a contested issue of material fact.

Section 501 of the Rehabilitation Act provides the sole remedy for a federal employee raising a claim of discrimination on the basis of disability. *Rivera v. Heyman*, 157 F.3d at 103. This provision creates a program within the federal government to encourage the employment of individuals with disabilities, requiring the departments and agencies of the executive branch to submit to the EEOC and other bodies plans for "for the hiring, placement, and advancement of individuals with disabilities" which include descriptions of "the extent to which and methods whereby the special needs of employees who are individuals with disabilities are being met." 29 U.S.C. §§ 791(a), (b). The Act also provides that the "remedies, procedures and rights" set forth in Title VII "shall be available, with respect to any complaint under [section 501] of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint." *Id.* § 794a(a)(1). "The regulatory schemes of the ADA and the Rehabilitation Act are similar." *Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir. 1997). Therefore, "[t]he terms common to both regulatory schemes are to be interpreted in the same way." *Id.*

To make out a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show "(1) that he is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of his disability, (3) that with reasonable accommodation, he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." *Id.* at 96–97. The parties do not contest that the first two prongs of this test are met. On rebuttal, an employer "can defeat the claim if it shows (a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue." *Id.* at 97.

### i.        Plaintiff's Claim of Failure to Provide Reasonable Accommodation

Defendant argues that Plaintiff cannot make out the fourth prong of her *prima facie* case because she was offered many reasonable accommodations while working at the Bronx VA. Defendant lists the following accommodations: (1) Plaintiff's daily starting time for work was moved from 10:00 A.M. to 8:00 A.M.; (2) Plaintiff was advised to contact persons in the Bronx VA's computer department for additional computer training; (3) Plaintiff was provided with an office closer to the nurse's station to reduce walking; (4) the number of patients assigned to Plaintiff was reduced from the entire first floor of Extended Care to four, and eventually, two patients; (5) Plaintiff's work schedule was reduced to four hours per day, two days per week; and (6) Plaintiff's work responsibilities were reduced. Plaintiff lists four requests for accommodation that Defendant denied: (1) a chaise lounge, Stephens-Buie Dep. 271:11–16; (2) a ten to fifteen-minute work break every hour, *id.*; (3) reduced data entry duties on account of inflammation of her hand, *id.* 273:3–274:18; and (4) assistance with a transfer to another position at the Bronx VA, *id.* 276:23–278:10.[3] Plaintiff argues that Defendant was required to grant every plausible requested accommodation unless Defendant could demonstrate that a particular accommodation was not possible or effective. Defendant, she claims, has failed to meet this burden.

Plaintiff is mistaken. Her interpretation of the Rehabilitation Act would require an employer to comply with every single accommodation requested by an employee, even if the employer had already conformed with the Act by providing other accommodations, unless the employer made an affirmative showing of impossibility or ineffectiveness for any particular accommodations it denied. The Act does not impose such a duty on employers. It "does not

---

[3] Plaintiff also lists provision of a sacroiliac belt as a requested accommodation, *id.* 276:7–22, but concedes that provision of this device was not the responsibility of her supervisors. *Id.*

require the employer to provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable." *Fink v. New York City Dept. of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995). "Once a reasonable accommodation has been made, a defendant has fulfilled its obligation to make an accommodation . . . . Thus, Defendant was not required to make Plaintiff's suggested accommodation, even if reasonable, since a reasonable accommodation had already been made." *Kemer v. Johnson*, 900 F. Supp. 677, 686 (S.D.N.Y. 1995), *aff'd mem.*, 101 F.3d 683 (2d Cir.), *cert. denied*, 519 U.S. 985 (1996); *see also Querry v. Messar*, 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998) ("An employer need only offer a reasonable accommodation; it need not provide the employee with the accommodation of her choice.").

Here, Defendant granted Plaintiff the majority of the accommodations she requested. Defendant agreed to a light duty schedule with substantially reduced working hours and allowed Plaintiff to start her working day early. Defendant also reduced her work responsibilities and the number of patients for which Plaintiff was responsible, and offered her additional training. Together, these accommodations constitute a reasonable and substantial effort by Defendant to enable Plaintiff to continue working at the Bronx VA. Plaintiff argues that the failure to grant the other accommodations she requested—the chaise lounge, hourly breaks, and transfer to another division—exacerbated her symptoms and ultimately forced her to cease working at the Bronx VA, but she provides no evidence supporting these speculative assertions. Nor does she provide evidence to support her claim that these accommodations would have enabled her to continue working. Moreover, Plaintiff's requested accommodation of ten to fifteen minute breaks per hour in a four-hour working day would have resulted in a further substantial reduction in her working hours. Defendant had the discretion to determine that such a drastically shortened work week would have rendered Plaintiff incapable of performing the essential functions of her

job.  *See Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 79 (S.D.N.Y. 1996) ("[A] disabled employee who cannot get to work as often as her employer requires is not otherwise qualified for her job . . . and her employer is not required to make allowances for her absenteeism.").

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of failure to provide reasonable accommodation for her disability under the Rehabilitation Act is granted.

### ii.    Plaintiff's Claim of Disability Discharge

Plaintiff alleges that she was discharged on account of her disability.  She argues that as a matter of law, a finding of failure to provide reasonable accommodation constitutes a discharge. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) ("[F]ailure to make reasonable accommodation, when the employee has satisfied the first three elements of [her] claim, amounts to discharge because of [her] disability.") (applying ADA).   However, as discussed *supra*, Plaintiff has failed to make out a claim of failure to provide reasonable accommodation.  She does not provide any other evidence for her claim of unlawful discharge due to disability and concedes that the Bronx VA did not terminate her employment when she ceased working.[4]

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of disability discharge under the Rehabilitation Act is granted.

### C.  Plaintiff's Hostile Work Environment Claim

Plaintiff claims that after she returned to work at the Bronx VA on December 28, 2004, she was subjected to harassment creating a hostile work environment.[5]  Compl. Part II, Section

---

[4] *See* Stephens-Buie Dep. 346:19–24 ("Q: Did you voluntarily stop working on June 3, '05?  A: "Could you explain—rephrase that? . . . Q: Did the VA fire you on June 3 '05?  A: No.")

[5] Plaintiff refers to separate harassment and hostile work environment claims, but under both Title VII and the Rehabilitation Act, allegations of harassment are properly understood as supporting a claim of hostile work environment.  *See, e.g.*, *Feingold v. New York*, 366 F3d 138, 149 (2d Cir. 2004) ("A plaintiff may establish a claim of disparate treatment under Title VII . . . by demonstrating that harassment on one or more of these bases [of race, color, religion, sex, or national origin] amounted to a hostile work environment."); *Pell v. Trs. of Columbia Univ. in*

E, ¶ M.  She alleges that this harassment took the form of inability to practice professional privileges, lack of access to patient information, denial of appropriate assignments, unnecessary supervision, failure to provide a formal orientation, and exclusion from decision-making processes.  *Id.* ¶¶ O, P.  Defendant argues that Plaintiff has failed to exhaust her administrative remedies with respect to these claims, and that they therefore should be dismissed.

Plaintiff does not specify whether she brings her hostile work environment claims under Title VII or the Rehabilitation Act.  However, both statutes and their accompanying regulations require that a federal government employee alleging discrimination in employment exhaust her administrative remedies before filing suit.  42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 794a(a)(1) (Rehabilitation Act); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) ("Title VII requires a plaintiff to pursue and exhaust administrative remedies before bringing suit . . . ."); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) ("EEOC regulations require an employee suing the federal government under the Rehabilitation Act to exhaust certain administrative remedies before initiating a suit in the district court.").[6]

When a plaintiff voluntarily withdraws a timely filed claim during the EEO process, "by withdrawing his claim he effectively fail[s] to exhaust his remedies."  *Brown v. City of New York*, 869 F. Supp. 158, 170 (S.D.N.Y. 1994); *see also Baber v. Runyon*, No. 97 Civ. 4789 (DLC), 1998 WL 912065, at *5 (S.D.N.Y. Dec. 30, 1998) ("[C]ourts considering whether a plaintiff who withdraws an administrative complaint has exhausted administrative remedies have

---

*the City of New York*, No. 97 Civ. 193 (SS), 1998 WL 19989, at *17 (S.D.N.Y. Jan. 21, 1998) ("Although § 504 does not specifically address harassment claims, the few courts considering this issue have held that hostile work environment harassment is actionable under the Rehabilitation Act.").

[6] Under both Title VII and the Rehabilitation Act, a federal government employee alleging discrimination must first consult with the relevant agency's EEO Counselor, and if the matter is not resolved informally, file a formal written administrative complaint; only 90 days after a decision on the complaint, or failure to render a decision after 180 days, may a federal government employee file a civil action in a federal district court.  29 C.F.R. §§ 1614.105(a)(1), 106(a), (b); 407(a), (b).  If a plaintiff appeals the agency's EEO decision to the EEOC, she has similar time limits to file a civil action after the EEOC issues its determination.  *Id.* § 1614.407(c), (d).

concluded that the withdrawal constitutes a failure to exhaust administrative remedies.").

Holding otherwise, and "[a]llowing a plaintiff to abandon the administrative remedies he has

initiated would tend to frustrate the ability of the agency to deal with complaints." *Wrenn v.*

*Secretary, Dept. of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990) (internal citation

omitted) (applying Age Discrimination in Employment Act); *Rivera v. United States Postal*

*Serv.*, 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claim, to fail to

exhaust one's remedies."), *cert. denied*, 486 U.S. 1009 (1988); *Khader v. Aspin*, 1 F.3d 968, 971

(10th Cir. 1993) (complainant "who abandons his or her claim before the agency has reached a

determination" has not exhausted administrative remedies).

Plaintiff included allegations of a hostile work environment in her initial EEO complaint

filed with the Department of Veterans Affairs on August 15, 2005. Stephens-Buie Decl. Ex. 10

at 2 ("On return to work under limited duty status I was forced to work in a hostile environment

in which I was harassed . . . ."). However, at her hearing before the EEOC, Plaintiff stipulated

that the only issues to be tried were her pay disparity claim under Title VII and the denial of her

requests for accommodation for her disability.[7] Tr. EEOC Hearing, Oct. 26, 2007, Blain Decl.

Ex. W, 8:2–20, 9:10–16. By stipulating to a proceeding on these limited issues, Plaintiff waived

all other issues before the EEOC, and thereby failed to administratively exhaust her claims for a

hostile work environment. Accordingly, Defendant's motion for summary judgment on

Plaintiff's hostile work environment claims under Title VII and the Rehabilitation Act is granted.

---

[7] Plaintiff states that she was proceeding *pro se* between 2005 and 2007, implicitly arguing that her claims should be liberally construed in her favor. However, she was represented by counsel at the EEOC hearing on October 26, 2007, and she is bound by her decision to withdraw her hostile work environment claim at that hearing. Blain Decl. Ex. W at 2.

### D.  Plaintiff's Retaliation Claim

Plaintiff claims that when she sought assistance regarding her discrimination claims from Bronx VA management and her labor union, her employer retaliated against her by subjecting her to further harassment.  Compl. Section II, Part E, ¶¶ M, Q.  Defendant contends that Plaintiff voluntarily withdrew her retaliation claim in her EEOC proceedings, but this argument is without merit; Plaintiff's original EEO complaint to the Department of Veterans Affairs contained no reference to retaliation.  Stephens-Buie Decl. Ex. 10.  Therefore, the proper inquiry is whether Plaintiff should be allowed to bring her retaliation claim despite her failure to raise this claim in her original EEO complaint.

"Claims not raised in an EEOC complaint . . . may be brought in federal court if they are reasonably related to the claim filed with the agency."  *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citation omitted) (applying Title VII); *Burke v. Evans*, 248 Fed. Appx. 206, 208 (2d Cir. 2007) (applying Title VII case law on requirement of reasonable relation to Rehabilitation Act claim).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Fitzgerald v. Henderson*, 251 F.3d 354, 259–60 (2d Cir. 2001) (internal quotation marks omitted).

Here, Plaintiff's original EEO complaint contained factual allegations corresponding to those she now raises in her retaliation claim.  First, the EEO complaint stated that she requested "clarification and intervention" from various Bronx VA officials and the "union representative" on several dates between January and March 2005.  Stephens-Buie Decl. Ex. 10 at 1.  Second, the EEO complaint alleged multiple incidents of discriminatory conduct from December 2004

through May 2005.  She claimed that her supervisors excluded her from meetings, would not

cooperate with her in performing patient care, and ignored her requests for light duty

assignments or transfer on account of her disability.  *Id.* at 2–3.  These allegations concern the

same incidents that Plaintiff now alleges in support of her retaliation claims, which maintain that

during this period Bronx VA administrators ignored Plaintiff's requests for meetings, threatened

her job security, and forced her to punch her clock and leave the premises simultaneously despite

her impaired mobility.  Stephens-Buie Dep. 382:8–384:4, 385:15, 403:19–25.  In short,

Plaintiff's factual allegations in support of her retaliation claims are substantially similar to those

included in her original EEO complaint, and "it is reasonable to conclude that Plaintiff gave the

EEOC notice of these incidents."  *Butts v. City of New York Dept. of Hous. Pres. & Dev.*, 990

F.2d 1397, 1403 (2d Cir. 1993), *superseded on other grounds by statute as recognized in*

*Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998).   Therefore, "the conduct

complained of" in Plaintiff's retaliation claim "would fall within the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.*

at 1402 (internal quotation marks and citation omitted).  Plaintiff's retaliation claims are

reasonably related to the allegations she raised in her EEO complaint, and she may bring these

claims despite her failure to exhaust administrative remedies.

      Plaintiff does not specify whether she brings her retaliation claim under Title VII or the

Rehabilitation Act.  All of Plaintiff's viable allegations of retaliatory conduct concern her

disability and her attempts to seek assistance from her labor union concerning her work

conditions with regard to her physical injury.  As Defendant points out, none of her allegations of

retaliatory conduct concern activity occurring after she filed her EEO complaint on August 15,

2005, which alleged discrimination on account of race and national origin as well as disability. Therefore, Plaintiff's retaliation claim falls under the Rehabilitation Act, and not Title VII.

Retaliation claims under the Rehabilitation Act "are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The elements of a retaliation claim under the Rehabilitation Act and Title VII "are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (applying Rehabilitation Act).

Regarding the first prong of this test, a plaintiff has engaged in protected activity when she "has opposed any practice made an unlawful employment practice" under Title VII, "or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Such a plaintiff "need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (internal quotation marks and citation omitted). Title VII's anti-retaliation provisions protect not only "the filing of formal charges of discrimination," but also "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.3d 203, 209 (1990). However, "implicit in the requirement that the employer

have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d at 292. Again, this framework applies to retaliation claims under the Rehabilitation Act. *Treglia*, 313 F.3d at 719.

Defendant argues that Plaintiff has failed to identify any retaliatory actions which took place after May 17, 2005, the date she contacted Alfred Hong, the Bronx VA EEO Counselor. However, Plaintiff also claims that Defendant retaliated against her for engaging in other protected activity—specifically, contacting the Bronx VA union representative and enlisting her assistance in negotiating her employment conditions with administrators. Stephens-Buie Dep. 379:10–12, 385:17–25. According to Plaintiff, the union representative contacted Bronx VA administrators between April 19 and May 3, 2005, attempting to schedule meetings to discuss Plaintiff's concerns. *Id.* 376:11–15, 386:17–20. Plaintiff alleges that after these contacts, Bronx VA administrators subjected her to ongoing harassment through May until early June of 2005. *Id.* 382:8–384:4, 384:15–385:12, 385:15, 403:19–25. Defendant argues that Plaintiff could not have been subject to sustained harassment after May 3, 2005 because she worked at the Bronx VA for only a few days during that period. Hong Decl. Ex. B, C. Moreover, Plaintiff has failed to establish that she specifically discussed her discrimination claims with the union representative, or that the May 3, 2005 meeting between her, the union representative, and the Bronx VA administrators addressed these claims. A district court "should freely give leave" to amend a complaint "where justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, Plaintiff is granted leave to amend her complaint with facts showing (1) that her contacts with the union representative concerned her claims of disability discrimination, and therefore constituted

protected activity; and (2) the dates on which she was subject to retaliatory harassment after May 3, 2005.[8]

Regarding the second prong of the *prima facie* case of retaliation, the United States Supreme Court has held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). The Second Circuit has defined such an action as "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks and citation omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks and citation omitted). Moreover, "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case." *Richard v. New York State Dept. of Corr. Servs.*, 180 F.3d 426 (2d Cir. 1999), *abrogated on other grounds by Burlington N.*, 548 U.S. at 68. Finally, "courts in this district

---

[8] District courts may grant leave to amend a complaint in response to a Fed. R. Civ. P. 56 motion for summary judgment. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (analyzing standards for motion for leave to amend filed in response to summary judgment motion). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). The Second Circuit has upheld a district court's denial of leave to amend where the moving party sought to assert a new cause of action at a late stage of the litigation. *John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 87–88 (2d Cir. 1998). However, in the instant case, Plaintiff is granted leave to amend not to add a new cause of action, but only to supply additional factual details regarding incidents already alleged in support of the causes of action already contained in the Complaint. The Complaint has already provided fair notice to Defendant of the incidents involved, Plaintiff filed her complaint *pro se*, Defendants did not file a motion to dismiss, and no trial has been scheduled. Amendment will not "result in new problems of proof" and "will not involve a great deal of additional discovery," and in such cases district courts should not deny leave to amend. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

have, on occasion, held that a series of individually insufficient allegations may constitute an adverse action in the context of Title VII." *Reckard v. Cnty. of Westchester*, 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004).

Here, Plaintiff alleges a sustained pattern of retaliatory conduct on the part of the Bronx VA administrators. She avers that the administrators threatened her job security, refused to cooperate regarding patient care, ignored her requests for meetings, and subjected her to "shouts, slamming doors in my face." *Id.* 382:8–383:3, 385:15, 403:19–25. She also claims that the administrators insisted that she physically leave the premises the moment her shift ended, despite the requirement that she punch the time clock and her difficulty in moving quickly because of her injury. *Id.* 383:4–384:4. Plaintiff alleges that the administrators imposed an unnecessary requirement that they review and approve her patient notes, a task she ordinarily performed herself, and then failed to conduct those reviews. *Id.* 384:15–385:12.[9] Defendant objects that the evidence is overly generalized and not actionable, because it merely consists of refusals to meet and a generalized lack of sympathy.

Here, the precise timing and duration of the alleged incidents of harassment is dispositive, for it can establish a casual connection between the alleged protected activity and the alleged retaliation. "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Because Plaintiff has failed to specify the precise dates of particular incidents, it is not clear whether the alleged harassment took place after her efforts to secure assistance regarding her

_____

[9] Plaintiff also claims that she was ultimately terminated in August 2007 in retaliation for pursuing her claims before the EEOC. Stephens-Buie Decl. ¶ 39. However, at this point Plaintiff had not worked at the Bronx VA for over two years, and she presents no evidence linking her termination to her EEOC complaint or any other protected activity. The Request for Personnel Action resulting in Plaintiff's termination states that Plaintiff's appointment had expired. Stephens-Buie Decl. Ex. 14.

disability discrimination claims, much less that the alleged protected activity and retaliation were causally connected. Moreover, the evidence presented by Plaintiff does not establish the number and frequency of incidents and the particular administrators involved in each incident; it is unclear whether those incidents collectively amounted to actionable conduct. Nor does Plaintiff match these incidents with the few dates when Plaintiff was present for work in May and June of 2005. Therefore, as held *supra*, Plaintiff's amendments to her complaints must supply the particular dates, persons, and details of each alleged incident of discrimination on the basis of disability.

In sum, Plaintiff is granted leave to amend her retaliation claim under the Rehabilitation Act. Such amendment will be effective only if Plaintiff can (1) establish that her discussions with her labor union representative and the representative's discussions with Bronx VA administrators concerned her claims of disability discrimination; (2) specify the date, persons involved, and circumstances of any incidents of harassment by Bronx VA administrators occurring after May 3, 2005; (3) show through these additional facts that the alleged incidents of harassment constituted retaliation for seeking union and EEO assistance with her disability discrimination claims. Any amendment and new evidence must meet the summary judgment standard set forth in Fed. R. Civ. P. 56(c). *See Milanese v. Rust-Oleum Corp*, 244 F.3d at 111.

### IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to all of Plaintiff's claims under Title VII, and Plaintiff's hostile work environment, failure of reasonable accommodation, and disability discharge claims under the Rehabilitation Act. Plaintiff is granted leave to amend her retaliation claim under the Rehabilitation Act.

Defendant may renew its motion for summary judgment after Plaintiff amends her Complaint and any necessary discovery is completed.

The parties are to consult with each other concerning the future progress of this litigation. Should the parties find it useful, the Court will favorably entertain an agreed motion to refer the case to mediation or to pursue other forms of resolution.

SO ORDERED.

Dated: June 27, 2011
New York, NY

_____
U.S.D.J.